ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 2 3 2010

CLERK, U.S. DISTRICT COURT
By_____
Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| VICENTE HERNANDEZ, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:10-CV-433-Y |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Vicente Hernandez, TDCJ-ID #1399397, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Tennessee Colony, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

On October 4, 2006, a jury found Hernandez guilty of engaging in organized criminal activity

in the 213th District Court of Tarrant County, Texas, and the trial court assessed his punishment at

40 years' imprisonment. (State Habeas R. at 46) On direct appeal, the Court of Appeals for the

Second District Court of Texas affirmed the trial court's judgment, and the Texas Court of Criminal

Appeals refused Hernandez's petition for discretionary review. *Hernandez v. Texas*, No. 02-06-363-

CR, slip op. (Tex. App.–Fort Worth Feb. 7, 2008) (not designated for publication); *Hernandez v.*

*Texas*, PDR No. 322-08. Hernandez also filed a postconviction state habeas application challenging

his conviction, which was denied by the Texas Court of Criminal Appeals on the findings of the trial

court without a hearing. *Ex parte Hernandez*, Application No. WR-73,796-01, at cover.

The state appellate court summarized the background facts of the case as follows:

> At about 10:00 p.m. on October 30, 2004, members of two rival gangs were
> smoking marijuana at appellant's residence on Chicago Street in Tarrant County.
> Twenty-five-year-old appellant was allegedly a member of the gang Eastside Trece.
> Appellant's friend Marcus, who was at appellant's house that day, was a known
> member of Eastside Trece. Fourteen-year-old victim Ray Cabrera was a member of
> the gang Fantasmas. Seventeen-year-old Ebarado Rodriguez was also a member of
> Fantasmas. A fight broke out between appellant and Ebarado, and appellant grabbed
> Ebarado's ear, ripping his earring off. Ebarado and Cabrera decided to leave and got
> a ride to Ebarado's brother's house from Albert Mendoza. Ebarado's brother, Ruben
> Rodriguez, a former member of Fantasmas, lived a few blocks away in the same
> neighborhood. Ruben awoke and found Ebarado crying and bleeding.

> Ruben, Ebarado, and Cabrera then got in Ruben's red and white Blazer and
> decided to return to appellant's house. Ruben testified that he went to appellant's
> house to talk to him about why he hit Ebarado, but he was prepared to fight if
> necessary. Neither Ruben, Ebarado, nor Cabrera took any weapons or guns. As they
> turned onto appellant's street, Ruben, Ebarado, and Cabrera saw people scattering
> and hiding behind trees and the mailbox, and then gunfire erupted. Several bullets
> hit Ruben's Blazer; Ruben put the Blazer in reverse to escape the gunfire, but
> Cabrera was shot in the head. Ruben found police arresting someone at a Carnival
> grocery store nearby, so he pulled into the store to get help and told them what had

happened.

Fort Worth Police Officer Jim Grow arrived at the Carnival grocery store and spoke with Ruben and Ebarado. Officer Grow was assigned to the gang enforcement unit. He testified that Cabrera had already been taken to the hospital when he arrived at the scene.

Officer Grow testified that the Blazer had multiple bullet holes in the back rear window area and bullet holes in the front bumper. He did not find any weapons in the vehicle. After the Blazer was towed, Officer Grow went to appellant's house. Upon entering the home, he found items indicative of gang membership in appellant's bedroom. For example, the walls were covered with Eastside writing and graffiti in what appeared to be a blue magic marker. The phrase "FUCC the world" was written on the wall. Officer Grow testified that different street gangs drop or replace letters when a rival gang utilizes that letter within their title or to indicate a possible alliance with another street gang, such as the Crips. In addition, the police identified the signs, phrases, and markings on the wall as symbols commonly identified with street gangs.

The desk/entertainment center in appellant's bedroom had various types of ammunition on it. Police also found magazine clips and a holster in the dresser drawers. Further, they found a piece of paper with a scribbled "ES" symbol attached to the wall. Officer Grow identified the symbol as one commonly used by Eastside Trece members and matched the symbol to the "ES" tattooed on appellant's back. Above the "ES" tattoo on appellant's back was another tattoo that said, "FUCC the world." From the closet of appellant's room, police accessed a crawl space underneath the house where they found a .9 millimeter pistol and an SKS rifle.

Officer Grow was also present when another officer searched appellant and found a single .9 millimeter live round made out of aluminum in his pocket. Officer Grow testified that .9 millimeter casings made out of aluminum were also found outside appellant's house on the ground. Police did not find any bullet holes in the house, nor did they find any shell casings in the street or in the Blazer. Ron Van Fleet, a firearms and toolmark examiner with the Fort Worth Police Department Crime Lab, testified at trial that the .9 millimeter gun found in the crawl space in appellant's room was the same gun that fired the ammunitions that ejected some of the casings found by the curb in front of appellant's home. Fleet also testified that some of the ammunition found in appellant's room, including the magazine clips, matched the .9 millimeter weapon.

The State charged appellant with engaging in organized criminal activity by committing aggravated assault while using or exhibiting a deadly weapon. At trial, appellant testified that he acted in self-defense and defense of others in shooting at

the Blazer. At the time of the shooting, appellant lived with his mother and three younger siblings. The house had three bedrooms, one for his mother and sister, one for his two younger brothers, and one for him.

Appellant testified that on the night of October 30, 2004, he heard Ebarado arguing with someone outside, and he went to see what was going on. He told Ebarado and his group to leave, but Ebarado punched him, so he had to defend himself. A few minutes after Ebarado left, Mendoza, the person who gave Ebarado and Cabrera a ride to Ruben's house, returned and told appellant that Ebarado and Ruben were coming back. Appellant testified that he believed that they were going to come back and shoot him and do something to his family, so he went inside and grabbed his gun. He testified that when he came back outside, the occupants of the Blazer and two other cars were shooting at his house. Appellant testified that he shot back to protect his family. Appellant's friend, Marcus, a known Eastside Trece member who had been hanging out with appellant that day, also began shooting at the Blazer.

Appellant also testified that he had been a member of Eastside Trece when he was younger but that he stopped being in a gang in 2000 because his new girlfriend did not want him to be involved with "that crowd." Appellant got his "ES" tattoo in his early teens when he was in the gang. He also testified that the gang stuff in his room was done a long time ago, but he had never painted over it.

*Hernandez*, No. 2-06-363-CR, slip copy, at 2-6 (footnotes omitted).

## D. ISSUES

Hernandez raises two grounds for habeas relief:

(1)     He received ineffective assistance of counsel; and

(2)     The evidence was insufficient as a matter of law to support his conviction.

(Pet. at 5)

## E. RULE 5 STATEMENT

Thaler believes that Hernandez has failed to exhaust his state remedies as to his second claim

as required by 28 U.S.C. § 2254(b)(1)(A). (Resp't Answer at 7-8)

## F. DISCUSSION

## Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08. Further, the statute requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

**Issues**

### 1. Ineffective Assistance of Counsel

Hernandez claims he received ineffective assistance of trial counsel because counsel filed, both, Hernandez's application for a probated sentence to be submitted to the jury and, against his wishes, a Motion for Assessment of Punishment requesting the court assess punishment. (Pet'r Mem. at 1-4) According to Hernandez, he elected to have the jury assess his punishment because only the jury could give him a probated sentence, and, thus, counsel's actions "removed" this option "off the table." (*Id.* at 2; Clerk's R. at 54-55)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

The state habeas court conducted a hearing by affidavit, and counsel responded to Hernandez's allegations as follows:

> Defendant and I had many discussions over many months as to trial strategy, the affirmative defense of self-defense and possible outcomes related to a jury trial. Mr. Hernandez was repeatedly informed that there was no guarantee as to whether a jury would find him guilty or not guilty. He had been offered a plea bargain of 10 years confinement in the TDCJ, which he turned down.

> I remember telling him that if a jury did not believe him and found him guilty, the jury would not likely provide any probation, but would most likely give him the upper end of the punishment range. I also told him that the judge of the court, Robert Gill, was also known for harsh punishments and that there was no easy choice for him to make if he refused the plea bargain offered by the State.

> I cannot find in my notes, nor do I have independent recollection as to whether I specifically told him that the Judge could not give probation. However, it would have been my normal habit and routine to have gone through this line of discussion with any client. I would have followed the same routine with this Defendant. It was made clear in developing the Court v. Jury punishment strategy, that a jury conviction was tantamount to time in prison – potentially 99 years to life. We discussed which option was likely to assess the most incarcerated time and then decided to proceed with the court in assessing any punishment.

(State Habeas R. at 31-32)

The state habeas court entered findings of fact, which were adopted by the Texas Court of Criminal Appeals, consistent with counsel's testimony and also found that Hernandez signed the Motion for Assessment of Punishment asserting he wanted the court to assess punishment and that Hernandez's claim to the contrary, after the fact, is inconsistent with his signature on the motion. (*Id.* at 34-38) The court further found that in light of the evidence and the violent nature of the offense, counsel's advice that it was highly unlikely the jury would have given Hernandez a probated sentence was proper. "The jury had deliberated for less than one and one half hours," and the victim "was partially paralyzed on his left side, had impaired use of his hand, walked with a limp, and had

trouble with his speech with the bullet remained lodged in his head." (*Id.* at 35, 38 (brackets in original omitted)) Applying the *Strickland* standard, the court concluded, absent any evidence, Hernandez had failed to prove the jury would have assessed a probated sentence, that counsel led him to believe he could receive a probated sentence from the trial court, or that counsel erroneously advised him the trial court could grant him a probated sentence. (*Id.* at 39-40) The court further concluded that counsel's decision to focus on who would most likely give the lesser sentence, instead of who could grant probation, was the result of reasonable trial strategy in light of the fact that it was highly unlikely Hernandez would have been granted probation.

An independent review of Hernandez's pleadings and the state court records does not reveal clear and convincing evidence that would rebut the presumption of correctness of the state court's factual findings. Thus, deferring to those findings, the state courts' rejection of the claim is not objectively unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*. Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). Furthermore, strategic decisions made by counsel are virtually unchallengeable. *See Strickland*, 460 U.S. at 689.

### 2. Sufficiency of the Evidence

Hernandez claims the evidence was legally insufficient to prove he engaged in organized criminal activity, for profit or otherwise, because he had not been affiliated with the Eastside Trece for over five years. (Pet'r Mem. at 4-6) Thaler asserts this claim is unexhausted as required by 28 U.S.C. § 2254(b)(1)(A) and procedurally barred from the court's review.

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1), (c)[1]; *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). This requires that the state court be given a fair opportunity to pass on the claim, which in turn requires that the applicant present his claim in a procedurally proper manner according to the rules of the state courts. *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

The record reflects Hernandez raised the claim in his appellate brief but did not raise the claim in his petition for discretionary review. Hernandez again raised the claim in his state habeas application, only to have the court find the claim had been raised on direct appeal and could not be

---

[1]The terms of 28 U.S.C. § 2254(b) and (c) provide in pertinent part as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.  .  .  .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

relitigated on state habeas review. (State Habeas R. at 41) This procedural default in state court is an adequate state procedural ground barring federal habeas review. *See Heiselbetz v. Johnson*, 190 F.3d 538, 1999 WL 642862, at *6 (5th Cir. July 26, 1999) (not designated for publication). Absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, the claim is procedurally barred from this court's review.

## II. RECOMMENDATION

Hernandez's petition for writ of habeas corpus should be denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until December 14, 2010. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until December 14, 2010, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November __23__, 2010.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE